UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA DORROUGH,

    Plaintiff                                   Civil Action No. 15-11914

v.                                          HON. GEORGE CARAM STEEH
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Theresa Dorrough ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #27] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #19] be DENIED.

## PROCEDURAL HISTORY

On February 5, 2007, Plaintiff filed an application for SSI, alleging an onset of disability date of September 20, 1990 (Tr. 115). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on September 2, 2009 in Detroit, Michigan before Administrative Law Judge ("ALJ") Roy Roulhac (Tr. 15). Plaintiff, represented by

attorney Michelle Johnson, testified, as did Vocational Expert ("VE") Diane Regan (Tr. )(32-39, 40-42). On November 4, 2009, ALJ Roulhac found Plaintiff not disabled (Tr. 15-22). On April 8, 2011, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for judicial review of the final decision in this Court on June 6, 2011. *Case no.* 11-12447. On October 2, 2012, the Honorable Gerald E. Rosen, remanded the case to the administrative level for further factfinding. *Id., Docket #33-34*; (Tr. 376-382).

On March 19, 2014, ALJ Michael R. Dunn presided at a rehearing (Tr. 256). Plaintiff, represented by Eva Guerra, testified, as did VE Luann Castellana (Tr. 272-287, 287-296). On June 11, 2014, ALJ Dunn found that Plaintiff was not disabled (Tr. 242-251). On April 15, 2015, the Appeals Council denied review (Tr. 217-220). Plaintiff filed for judicial review of the final decision in this Court on May 28, 2015.

## BACKGROUND FACTS

Plaintiff, born June 6, 1969, was 45 when ALJ Dunn issued his decision (Tr. 115, 251). She completed 11th grade and worked previously as a recreation aide (Tr. 128, 132). Her application for benefits states that she is disabled as a result of asthma and hypertension (Tr. 128).

### A. Plaintiff's Testimony (March 19, 2014 Hearing)

*Plaintiff's counsel prefaced her client's testimony by amending the alleged onset date to January 25, 2007 with the disability ending on July 31, 2010* (Tr. 266). *The ALJ indicated that his questions would refer to Plaintiff's condition for the same period* (Tr. 272).

Plaintiff then offered the following testimony:

She had a driver's license but did not drive during the relevant period (Tr. 273). She relied on her brother or friends to drive her to doctors' appointments (Tr. 273). She stood 5' 0" and weighed 269 (Tr. 274). She had three children, two wheelchair-bound and one with

a cognitive impairment (Tr. 274). She took care of the children without help from others (Tr. 275).

During her school years, Plaintiff was placed in special education (Tr. 275). She was unable to read a newspaper but could write and read a grocery list (Tr. 275). She did not have surgery, injections, or inpatient or emergency treatment for her knee condition for the relevant period (Tr. 277). She underwent physical therapy but it did not help the knee condition (Tr. 278). During the relevant period, she did not require the use of a cane (Tr. 279). She did not receive emergency treatment for asthma but took Flovent, ProAir, and Albuterol (Tr. 277). She used a nebulizer three times a day (Tr. 281). She took medication for hypertension during the relevant period but did not take pain medication (Tr. 278). She experienced "some" knee pain during the relevant period but the pain had worsened recently (Tr. 278).

During the relevant period, she was unable to walk for more than one block due to asthma (Tr. 279). She was unable to stand for more than 10 minutes but could sit for unlimited periods (Tr. 279). She did not experience manipulative limitations during the relevant period (Tr. 280).

In response to questioning by her counsel, Plaintiff reported that the father of her children became disabled around 2010, but before that time he was able to help with laundry and cooking chores (Tr. 283). She testified that during the relevant period, she sat or lay down when becoming short of breath, adding that she needed to elevate her legs and use a nebulizer (Tr. 283-284). She reported that she required around 30 minutes to recover after becoming short of breath and was unable to climb or descend stairs (Tr. 285). She stated that during the relevant period, hypertension caused migraine headaches around six to eight times a month which she coped with by taking a nap (Tr. 286). She reported that she left school

before graduating because she "couldn't understand the work" (Tr. 287).

### B. Medical Evidence

#### 1. Records Related to Plaintiff's Treatment

##### a. Records Predating the Alleged July 2, 2010 Cessation of Disability[1]

In October, 2006, Plaintiff sought emergency treatment for a cough and nasal congestion (Tr. 165). Plaintiff reported shortness of breath on exertion and malaise (Tr. 165). A review of systems was otherwise normal (Tr. 167). A chest x-ray showed "very minimal interstitial and alveolar infiltration" of the right lower lobe (Tr. 170).

On January 23, 2007, Stanley Frencher, M.D. noted that Plaintiff was receiving treatment for asthma and hypertension and was being evaluated for sleep apnea (Tr. 173, 194). Dr. Frencher noted that Plaintiff was unable to "walk or stand for long periods" (Tr. 173). Treating notes state that she used Abuterol for asthma but that her lungs were clear (Tr. 194). April, 2007 treating records state that Plaintiff was "feeling better" with improved symptoms of asthma (Tr. 197). Notes from later the same year also note clear lungs (Tr. 199).

Dr. Frencher's April and September, 2008 treating records note "no complaints" (Tr. 201, 205). Records from the next month also note "no complaints" but state that the hypertension (140 over 94) was "uncontrolled" (Tr. 203). Dr. Frencher's 2009 treating records note that the asthma was asymptomatic (Tr. 190). Plaintiff alleged lower back pain without radiation (Tr. 190). Her blood pressure was 132 over 88 (Tr. 190).

In September, 2009, Dr. Frenchy performed an assessment of Plaintiff's functional abilities, finding that symptoms of asthma, hypertension, and knee pain would be constantly

---

[1] Plaintiff alleges an onset date of January 25, 2007. Records created in the year preceeding the alleged onset date are also included.

distracting in a work setting (Tr. 210). He found that Plaintiff was incapable of even "low stress" jobs and was unable sit, stand or walk for even two hours in an eight-hour workday (Tr. 210-211). He found that Plaintiff required a sit/stand option and would be required to take unscheduled breaks over the course of the workday (Tr. 211). He found that Plaintiff did not require leg elevation (Tr. 211). He limited Plaintiff to lifting or carrying less than 10 pounds on a rare basis (Tr. 211). He precluded all stooping, crouching, and climbing with a restriction to "rare" twisting (Tr. 212). He found that Plaintiff's conditions would require her to miss work more than four days of work each month (Tr. 212). The same month, an x-ray of the knees showed osteoarthritis, more severe on the left than right (Tr. 215, 486). A chest x-ray from the same day was unremarkable (Tr. 216, 487).

### b. Records Created Subsequent to July 31, 2010

July, 2011 records by Dr. Frencher note that Plaintiff used Abuterol four times a day (Tr. 507). In October, 2011, Plaintiff reported pain in both knees (Tr. 505). Treating records note clear lungs (Tr. 505). March, 2012 x-rays of the knees show bilateral moderate osteoarthritis with chondrocalcinosis on the left (Tr. 490). An MRI of the left knee taken later the same month shows osteoarthritis, a meniscus tear, and superficial and deep infrapatellar bursitis (Tr. 491, 494). Plaintiff demonstrated a full range of motion and full muscle strength (Tr. 493). She reported level "10" knee pain but denied shortness of breath (Tr. 495). The following month, she was prescribed physical therapy and Motrin 800 for knee pain (Tr. 501). June, 2012 records note that she experienced partial relief from knee pain with Norco (Tr. 503). October, 2012 records note clear lungs (Tr. 525). In April, 2013, Plaintiff reported only "minimal improvement" from physical therapy (Tr. 523).

### 2. Non-Treating Records

In November, 2012, Bina Shaw, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of asthma "since early childhood" (Tr. 514). Plaintiff reported difficulty walking, squatting, and bending due to knee problems (Tr. 514). She reported the use of Albuterol four times a day (Tr. 514). Dr. Shaw observed a full range of hip, knee, and ankle motion with mild limitation in the lumbar spine (Tr. 516-517). Dr. Shaw found that Plaintiff could lift at least 10 to 15 pounds for eight hours each day (Tr. 516). Dr. Shaw found that Plaintiff did not require a walking aid (Tr. 520).

### C.     Vocational Expert Testimony (March 19, 2014 Hearing)

VE Luann Castellana found that Plaintiff's recreational aide activity did not constitute past relevant work (Tr. 288). The ALJ then posed the following question, taking into account Plaintiff's age, educational level, and lack of past relevant work:

> Assume a worker capable of sedentary exertional activity[2] . . . . Lifting and carrying up to 10 pounds occasionally, less than that on a frequent basis. Want you to assume that our worker could sit for six out of eight hours, stand and walk for two out of eight hours. Again in sedentary work as defined. Want you to assume our worker could occasionally climb ramps and stairs, but it would be limited to one flight only and with the use of a handrail. Our worker should never climb ladders or scaffolds. Can occasionally balance, stoop, and crouch, but should never be required to kneel or crawl. Our worker should not be exposed to unprotected heights. Must avoid exposure to hazardous machinery. The work should not involve[] commercial driving. Our worker must avoid concentrated exposure to pulmonary irritants. Avoid concentrated exposure to extremes of heat or cold. Now, based upon those assumed facts, would there be jobs that exist in significant numbers that such a worker would

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

be capable of performing?

The VE testified that the individual could perform the work of a sorter/inspector (2,500 positions in Southeast Michigan); packager (2,000); and assembler (Tr. 2,500) (Tr. 290). The VE testified that if the hypothetical restrictions were amended to include an "at will" sit/stand option, the sorter/inspector job numbers would be reduced to 1,000, assembler, 1,200, and packager, 1,000 (Tr. 291). The VE testified that if the same individual were off task more than 20 percent of the day because of pain, or, were required to miss three or more days of work each month, all competitive work would be precluded (Tr. 291). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for the "sit/stand option" which was a limitation not addressed in the DOT (Tr. 292).

In response to questioning by Plaintiff's counsel, the VE testified that the inability to sit, stand, or walk for more than four hours a day would preclude all full-time work (Tr. 293-294). The VE stated that the inability to stoop would not preclude most sedentary jobs (Tr. 294).

### D. The ALJ's Decision (June 11, 2014)

Citing the medical records, ALJ Dunn determined that Plaintiff experienced the severe impairments of "asthma, obesity, degenerative joint disease of the bilateral knees, and lumbago," finding that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 244-245). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions:

> [She] can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently [and] sit for a total of 6 hours in an 8-hour workday. [She] requires a sit/stand option at will, provided the individual is not off-task more than 10

% of the workday. [She] can never climb ladders and scaffolds [and] can never kneel or crawl. [She] can occasionally climb ramps and stairs, limited to one flight only and with the use of a handrail [and] can occasionally balance, stoop, and crouch. [She] must avoid all exposure to unprotected heights. [She] must avoid exposure to hazardous machinery. The claimant cannot perform commercial driving [and] must avoid concentrated exposure to pulmonary irritants, extreme cold and extreme heat (Tr. 245-246).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the sedentary, unskilled work of a sorter/inspector, packager, and assembler (Tr. 251).

The ALJ discounted the allegations of limitation for the relevant period, citing January, 2007 x-rays showing clear lungs (Tr. 247). He noted that Plaintiff's asthma was asymptomatic as of July, 2007 (Tr. 247). He noted that her extremity strength "consistently measured 5/5" (Tr. 250). The ALJ discounted Dr. Frencher's September, 2009 disability opinion, finding that it was "inconsistent with the medical evidence of record" including Dr. Frencher's own treatment notes (Tr. 248). The ALJ observed that medical records documenting Plaintiff's condition between March, 2012 and September, 2013 were not relevant to whether she was disabled between January 25, 2007 and July 2, 2010 (Tr. 250, 488-525).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that


2:15-cv-11914-GCS-RSW Doc # 28 Filed 08/18/16 Pg 9 of 16 Pg ID 673

there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).


## ANALYSIS

In her first argument, Plaintiff contends that ALJ Dunn failed to follow the District Court's October 2, 2012 remand order by declining to call a medical expert at the March 19, 2014 rehearing. *Plaintiff's Brief,* iv, 12-17, *Docket #19.* She argues second that the ALJ's observation at the hearing that the Dr. Frencher's restriction of "no stooping" was "a little bizarre" disregarded SSR 96-9p which states that the inability to stoop would preclude most unskilled, sedentary work. *Id.* at 20 (*citing* Tr. 297). In her third argument, Plaintiff disputes the finding that her claims were not credible, noting that her testimony was consistent with Dr. Frencher's September, 2011 assessment. *Id.* at 17-20. In her fourth and fifth arguments respectively, Plaintiff argues generally that neither the RFC nor the ultimate Step Five determination is supported by substantial evidence. *Id.* at iv-v.

### A. The Remand Order and SSR 96-9p (Arguments 1 and 2)

Plaintiff's claim that the ALJ did not comply with the order to remand reflects a misreading of the District Court's opinion. On August 10, 2012, Magistrate Judge Michael J. Hluchaniuk issued a Report recommending a remand on the basis that the Step Three finding that Plaintiff did not medically equal a listed impairment was not supported by a medical opinion. Case no. 11-12447, *Docket #22, 23-27 (Tr. 369-373)*(*citing Stratton v. Astrue,* 987 F. Supp. 2d 135, 148 (D. N.H. 2012)). However, the District Court declined to remand on that basis, noting that other courts in this District had found that in some instances, a medical opinion on the issue of equivalency was not required. *Id., Docket #33, 3* (Tr. 378)("The Court finds it unnecessary to choose a side in this debate. . ."). Instead, the District Court remanded on the basis that the ALJ erroneously referred to a non-medical assessment by a

Single Decision Maker ("SDM") as a medical opinion. *Id.* at 5 (Tr. 380)("The Court is unwilling to assume that the ALJ would have decided this issue the same way if he had correctly understood that there were no medical opinions in the record regarding the question of medical equivalence"). The Court found that a remand was warranted "so that the ALJ may address [the] matter in the first instance." *Id.* However, the opinion and order does not state that the ALJ was required to obtain the opinion of a medical expert.

Plaintiff's argument is puzzling, considering her counsel's statement at the rehearing that a medical expert was *not* required. Prior to Plaintiff's testimony, ALJ Dunn commented that the District Court's decision "seemed to suggest that a medical expert might be necessary as part of the remand order" (Tr. 269). However, Plaintiff's counsel specifically waived a request for a medical expert: "*I would waive that issue of having a medical expert*. Our arguments to the Federal Court did not really even indicate that we thought she met a listing except for to use the case with regard to [SSR 02-1p] . . . . And so I don't think having a medical expert is - - also I agree that it would not be necessary" (Tr. 270-271)(emphasis added). Further, Plaintiff has presented no basis for concluding that her conditions met a listed impairment or otherwise shown harm from the absence of a medical opinion regarding the same.

Plaintiff's argument that the ALJ disregarded SSR 96-9p is likewise not well taken. She bases this argument on the ALJ's comment that "the idea that somebody can't stoop at all suggest[s] to me that they can never sit down" and [referring to Dr. Frencher's preclusion on all stooping] "becomes a little bizarre" (Tr. 297). Plaintiff cites SSR 96-9p which states that the "complete inability to stoop would significantly

erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply . . ." 1996 WL 374185, *8 (July 2, 1996). However, the ALJ rejected Dr. Frencher's "no stoop" opinion and instead, found that Plaintiff was capable of *occasional* stooping (Tr. 289-291, 245). His finding that Plaintiff was able to stoop on an occasional basis, at a minimim, is supported by Dr. Shaw's observation of a full range of motion in all joints with the exception of mild limitations in the lumbar spine (Tr. 516-517).   His finding that Plaintiff could stoop occasionally is wholly consistent with SSR 96-9p which states that a restriction to "occasional stooping [] by itself," would "only minimally erode the unskilled occupational base of sedentary work." SSR 96-9p at *8.

### B.  Plaintiff's Other Arguments for Remand

 While Plaintiff appears to fault the ALJ for declining to adopt Dr. Frencher's September, 2009 disability opinion, the ALJ's rationale for rejecting the treating opinion was well articulated and supported.  The ALJ noted that the opinion that Plaintiff was unable to perform even sedentary work was contradicted by Dr. Frencher's own treating records noting clear lungs and "asymptomatic" asthma (Tr. 248).  As to the knee condition, the ALJ noted that Plaintiff did not require pain medication for the period in question (Tr. 248).   Because the ALJ provided "good reasons" for rejecting Dr. Frencher's opinion, a remand on this basis is not warranted. 20 C.F.R. § 404.1527(c)(2).

Plaintiff makes a number of additional arguments in favor of remand.  She takes issue with the ALJ's statement that the record "does not contain a medical assessment of the claimant's physical residual functional capacity by a medical professional" (Tr. 249), pointing out that Dr. Frencher's treating opinion constitutes

"a medical assessment" (Tr. 249). While the ALJ's statement, taken out of context, appears to overlook Dr. Frencher's September, 2009 assessment, the proceeding page is devoted in majority part to Dr. Frencher's findings and the ALJ's reasons for rejecting them. There is absolutely no question that Dr. Frencher's assessment was considered by the ALJ. The ALJ's "no medical assessment" statement is more reasonably interpreted to acknowledge that (contrary to the previous ALJ's erroneous finding) the record does not contain a "*State agency* medical opinion" (Tr. 249, 380)(emphasis added). The ALJ's stated recognition that the record did not contain a "State agency medical opinion" addresses the District Court's order to remand on the basis that it was unclear whether the ALJ "correctly understood that there were no medical opinions in the record regarding the question of medical equivalence"(Tr. 249, 380). The ALJ's statement makes clear that he had not mistaken the non-medical assessment for a medical source opinion.

Further, despite Plaintiff's contention, The ALJ did not err in declining to include the condition of hypertension among the "severe" impairments at Step Two of the analysis. *Plaintiff's Brief* at 11-12. While a Step Two "severe" condition refers to any condition that would have more than a minimal effect on the claimant's work abilities, *Farris v. Secretary of HHS,* 773 F.2d 85, 89-90 (6th Cir.1985)(*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984), the ALJ noted that Plaintiff's allegations of frequent headaches due to hypertension for the relevant period were unsupported by the treating records. My own review of the treating records shows that while Plaintiff experienced hypertension, she did not report frequent headaches or other symptoms of the condition.

Likewise, the ALJ adequately considered the condition of obesity in crafting

the RFC. In the instance that a claimant is found to be obese, the Commissioner must conduct an individualized assessment of the impact of the claimant's obesity on his or her functional abilities. SSR 02–1p, 2002 WL 34686281, *3 (June 21, 2002). However, when determining the impact upon an individual's ability to function, SSR 02–1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Sec.,* 359 Fed. Appx. 574, 577 (6th Cir.2009). The ALJ did just that. First, he found that the condition was a severe impairment, noting Plaintiff's body mass index ("BMI") of 55 (Tr. 244). Next, he cited Dr. Shaw's consultative finding that despite obesity, Plaintiff experienced full muscle strength, a normal gait, and a full range of motion in all joints except for a slightly reduced range of lumbar spine motion (Tr. 248-249). Despite Dr. Shaw's finding that Plaintiff did not experience particularly significant physical limitations, the ALJ included a sit/stand option among the limitations for in the RFC, noting that Plaintiff would have "good and bad days," due in part to the "aggravat[ing]" effect of obesity on her various conditions (Tr. 245, 250).

More generally, the ALJ's rejection of some of the alleged limitations is well supported and explained. He cited treating records from 2007 forward stating that the condition of asthma was stable with treatment (Tr. 247). He noted that Dr. Frencher had not prescribed pain medication during the relevant period. He cited Dr. Shaw's finding of "no major crepitus" of the knees, a steady gait, and a normal neurological examination (Tr. 249). Notably, while the medical records post-dating the period in question show that Plaintiff's knee condition worsened, she acknowledged that she was able to engage in substantial gainful activity subsequent to July 31, 2010 (Tr.

266-267). Accordingly, the conclusion that Plaintiff's allegations of limitation were not wholly credible are entitled to the deference regularly accorded an ALJ's credibility determination. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.,* 502 F.3d 532, 542 (6th Cir. 2007) (*citing Walters v. Commissioner of Social Sec*., 127 F.3d 525, 531 (6th Cir.1997)).

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's medical conditions or personal challenges. However, because the ALJ's determination was within the "zone of choice" accorded the administrative fact-finder, it should be remain undisturbed. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #27] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #19] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                          s/R. Steven Whalen
                                                          R. STEVEN WHALEN
                                                          UNITED STATES MAGISTRATE JUDGE

Dated: August 19, 2016

### CERTIFICATE OF SERVICE

     I hereby certify on August 19, 2016 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants August 19, 2016.

                                                          s/Carolyn M. Ciesla
                                                          Case Manager for the
                                                          Honorable R. Steven Whalen

Dated: August 19, 2016